## Richmond

JAMES EDWARD JOHNSON V. COMMONWEALTH OF VIRGINIA.

June 12, 1972.

Record No. 7920.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*G. Marshall Mundy*, for plaintiff in error.

*James E. Kulp, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

James Edward Johnson was convicted in the court below of possessing marijuana with intent to distribute this drug. We granted him a writ of error limited to a consideration of whether the action of the police officers in failing to announce and identify themselves before forcibly entering defendant's apartment constituted an unreasonable search and seizure.

On January 12, 1971 Roanoke city police officers, armed with a search warrant, entered defendant's apartment by knocking open its door with a sledge hammer. The police did not knock on the door, identify themselves or make any announcement of their presence.

The officers knew from prior investigation that there were two locks on the door; that it was equipped with a peephole which was

used by the occupants for surveillance of anyone who knocked on the door; that approximately 3 to 4 feet from the room they intended to enter there was a bathroom furnished with a commode and a shower; and that this room was being used for the distribution of narcotics. The officers further knew from experience, and from the arrangement of defendant's apartment, that any marijuana on the premises could be disposed of very rapidly if they had knocked at the door and announced themselves.

Officer G. F. Dyer, of the Roanoke City Vice Squad, testified that he broke down the door because he felt that evidence might be destroyed if he announced his presence prior to entry. When the police entered the apartment they found the defendant sitting at a table on which there were several bags of marijuana, and holding a large bag of marijuana in his lap.

We are not advised of any prior decision by this court considering the validity of a "no knock entry" in the execution of a search warrant. The law in Virginia covering search warrants is found in Article 1, Section 10 of the Constitution of Virginia, which prohibits general warrants, and in Code §§ 19.1-83 through 19.1-89. There is no specific statute relating to "no knock entry" in executing a search warrant. We therefore consider whether an unannounced search is reasonable within the meaning of the Fourth Amendment to the United States Constitution and the Constitution of Virginia. What is a reasonable search is purely a judicial question, and in determining it the court must look to all the circumstances. *McClannan* v. *Chaplain*, 136 Va. 1, 116 S. E. 495 (1923). Also, the absence of statutory authority mandates an examination of common law principles. Code § 1-10.

The defendant's position is that the lawfulness of the search was vitiated by the method of entry into his apartment. He claims that before police officers may resort to a forced entry they must identify themselves and make their purpose known.

The earliest common law decision enunciating the rule of prior notice appears to be *Semayne's Case*, 5 Coke Rep. 91a, 91b, 11 Eng. Rul. Cas. 629, 77 Eng. Rep. 194, 195 (1603) where it was said:

> "In all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors * * *."

The reasons for the requirement of notice of purpose and authority have been said to be that the law abhors unnecessary breaking or destruction of any house, because the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property. This general rule has been transferred to the statute books in a majority of the states and in the federal law, and its vitality has been attested by commentators, text writers, law review articles and decisions of federal and state courts. *See Miller* v. *United States*, 357 U. S. 301 (1958), *Accarino* v. *United States*, 179 F. 2d 456 (D. C. Cir. 1949), *Announcement in Police Entries*, 80 *Yale L. J.* 139 (1970), Sonnenreich & Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem*, 44 *St. John's L. Rev.* 626 (1970).

However, at least one commentator has questioned the force of *Semayne's Case* because it involved the execution of a civil warrant. We further observe that the force of the *Semayne's* admonition against unannounced police entry is lessened by use of the precatory language that the sheriff "ought" to announce his presence. 44 *St. John's L. Rev.* at 627-29.

Some judicial decisions have granted exceptions and qualifications even in states which have statutes requiring police announcements before entry. These exceptions have been made because of exigent circumstances and where the facts make it evident that the officers' purpose is known, or where announcement might frustrate the arrest, increase the peril of the arresting officer or permit the destruction of evidence. *See State* v. *Clarke*, 242 So. 2d 791 (Fla. 1971); *Scull* v. *State*, 122 Ga. App. 696, 178 S. E. 2d 720 (1970); *State* v. *Linder*, 291 Minn. 217, 190 N. W. 2d 91 (1971); *People* v. *Lujan*, 484 P. 2d 1238 (Colo. 1971) and the authorities cited therein.

Maryland statutes are also silent on the formalities of the execution of search warrants. In *Henson* v. *State*, 236 Md. 518, 204 A. 2d 516 (1964) the Court of Appeals of Maryland upheld the validity of unannounced police entry in the execution of a search warrant on the basis of exigent circumstances.

The Congress of the United States has acknowledged the need for surprise entry under certain circumstances and conditions by its passage of the Controlled Substances Act of 1970 (Pub. L. No. 91-513) and the District of Columbia Court Reform and Criminal Procedure Act of 1970 (Pub. L. No. 91-358).

*Ker* v. *California*, 374 U. S. 23 (1963) holds that under certain

circumstances an unannounced police search is constitutionally permissible. The decision was based on judicially engrafted exceptions to California statutes which required police officers to demand admittance and explain their presence before breaking into a dwelling place to effect an arrest. 374 U. S. at 37, 38.

Regarding the protection of constitutional rights during unannounced searches, the California Supreme Court in *People* v. *Maddox*, 46 Cal. 2d 301, 294 P. 2d 6, *cert. denied,* 352 U. S. 858 (1956) has said:

> "[W]hen an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with [the statute]." 46 Cal. 2d at 306, 294 P. 2d at 9. To the same effect see *State* v. *Clarke, supra,* 242 So. 2d at 795.

We further believe that the common law should be evaluated in the light of modern technology and the nature of illegal drug traffic in which small, easily disposable quantities of drugs can yield large profits.

In Kaplan, *Search and Seizure, A No-Man's Land in the Criminal Law,* 49 *Cal. L. Rev.* 474, 502 (1961) it was said:

> "* * * [I]t would seem that the perfection of small firearms and the development of indoor plumbing through which evidence can quickly be destroyed, have made [statutes requiring notice and entry before the use of force to enter] * * * a dangerous anachronism. In many situations today * *, a rule requiring officers to forfeit the valuable element of surprise seem senseless and dangerous."

Turning to the facts in the instant case, there is abundant evidence to support the Commonwealth's position that the exigencies of the circumstances warranted a rapid entry by the police officers into Johnson's apartment. The police had reliable information that this apartment was a place from which illegal drugs were being dispensed.

They knew that the door to the apartment was protected with two locks, and that persons seeking entry were placed under surveillance before being admitted. They knew that drugs were being stored and dispensed from the kitchen and from a point only 3 to 4 feet from the bathroom where there were two receptacles that could have been used to dispose of and destroy evidence.

We hold that under the facts of this case the method of entry used by the police was not unreasonable. It did not offend the standards of the Fourth Amendment to the United States Constitution or violate any provision of the Constitution or statutes of Virginia. The evidence seized was properly admitted.

*Affirmed.*