STATE OF CONNECTICUT v. ANONYMOUS (1973-5)*

SUPERIOR COURT

MULVEY, J.   The defendants have moved to suppress as evidence items seized by the police pursuant to a search warrant. The defendants have pressed several grounds in support of their motion but, in the view we take of the matter, only one ground need be discussed. The court will take judicial notice of the application, supporting affidavit and search warrant, a part of the file in this case.

---

* Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

The warrant supported by affidavit was issued by a judge of the Circuit Court to enter into or upon and search a one-family ranch-style rented house. The warrant also authorized the search of the person of one of the defendants. Five or six police officers participated in the search, which took place at about 12:45 a.m. At the hearing on the motion, the defendants called a police officer as their only witness. The state offered no witnesses. The officer testified on direct examination as follows: "Q.—Were you the one that broke the door in? A.—Yes, Sir. Q.—And did you say anything prior to the time you broke the door in? A.—No, Sir. There was no one to say anything to. Q.—Did you attempt to get the attention of the people in the house, who might be present in the house? A.—I knocked on the door but they had the television on. They didn't hear it. Q.—How long did you wait after you knocked on the door, prior to the time you broke the door in? A.—I don't recall. Not very long. Q.—A couple of seconds? A.—You could say that. Q.—Did you knock again? A.—No, just once. Q.—You didn't make any statement? You didn't say, 'Open up, this is the police,' did you? A.—No. Q.—You didn't say, 'Open up, this is the police; we have a search warrant,' did you? A.—No, Sir."

Again, the officer testified on direct examination as follows: "Q.—Officer, how did you gain entry to the premises? A.—Through the front door. Q.—Did the defendants open up the front door for you? A.—No, they didn't. Q.—How did you get inside? A.—Hit the door and it went. Q.—You broke the door in? A.—Right. Q.—When you got inside the premises you told the defendants this was the state police and 'We have a search warrant'? A.—Yes, Sir. Q.—And this was the first time anything was said to any of the defendants? A.—Yes, Sir."

In *State* v. *Mariano,* 152 Conn. 85, 94, cert. denied, 380 U.S. 943, our Supreme Court spent considerable time discussing the procedure to be followed in executing a search warrant: "From early colonial times we, in this jurisdiction, have followed the common-law requirement in the execution of search warrants that, in the absence of some special exigency, before an officer may break and enter he *'ought to signify the cause of his coming, and to make request to open the doors.'* . . . This requirement is in accordance with the rule in most jurisdictions. For an excellent discussion, see Blakey, 'The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California,' 112 U. Pa. L. Rev. 499. In an appendix to that article (pp. 560, 561), there is a detailed analysis of the federal statute and twenty-nine state statutes authorizing forcible entry in the execution of search warrants. The author notes that almost invariably the statutes condition the right to break and enter *upon due notice.* The length of time an officer must wait before breaking in after an announcement must be reasonable in the light of the circumstances in the particular case. . . . Recognized circumstances justifying prompt entry *after announcement* include those where the persons within already know of the officer's authority and purpose, where the officers are justified in the belief that the persons within are in imminent peril of bodily harm or where those within are then engaged in some activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." (Italics supplied.)

The Supreme Court of Indiana in *State* v. *Dusch,* 259 Ind. 507, 513, in a factually similar case, after analyzing *Ker* v. *California,* 374 U.S. 23, had this to say: "In this case the evidence produced by the State at the suppression hearing below failed to demonstrate the existence of any exigent circum-

stances which might justify an unannounced entry. There is absolutely no evidence here which would indicate that the occupant of the house acted in a furtive manner, or that he knew of the presence of the police outside, or that he was in the process of attempting to destroy the evidence which the police sought, or even that the amount of the drugs to be searched for was so small or so placed that they lent themselves to easy disposal. Apparently the State would have us hold that the mere fact the object of the search was to be drugs would itself justify an unannounced entry. Such an exception to the knock and announce requirement would be overly broad and would be based on the type of objects searched for rather than on the particular circumstances approach followed by all of the eight justices in *Ker*. The mere fact that there are drugs involved in the search cannot be held to create a per se exception to the announcement requirement. Exceptions to the entry requirement must be founded on particularity and not on generality. Such a blanket rule will not do for specific situations which call for differentiation."

This court finds that prior to breaking in the door of the premises the officer did not announce the cause of his coming or request that the door be opened. This court finds that the officer knocked at the door and in, at the most, two seconds broke the door in. This court finds that the circumstances of the search by the officer were not such as to excuse or justify noncompliance with the law of this state as set forth in *State* v. *Mariano,* supra.

This court concludes, for the reasons stated above, that the search of the premises was illegal, unreasonable, and in violation of the defendants' constitutional rights. The motion to suppress is granted.